## Case No. 11,884.
### I.OBBINS v. McDONALD.
[2 Lowell 140.] [1]

District Court, D. Massachusetts.    Sept., 1872.

DEMURRAGE—OFFER TO RECEIVE ELSEWHERE.

Where a vessel was consigned to a certain wharf, which was full when she arrived, and the consignee offered to receive the cargo at an adjoining wharf, which was safe and suitable, but the master insisted on waiting until the first-mentioned wharf was unoccupied,—*held*, he could not recover demurrage in a court of admiralty for the time lost by waiting beyond what would have been lost if he had accepted the offer.

The libel propounded that the schooner Z. L. Adams, commanded by the libellant [W. E. Robbins], took on board a cargo of three hundred and fifty-three tons of coal at Philadelphia, 29th November, 1871, for which a bill of lading was given, reciting that the vessel was bound to "the Lowell R. R. wharf, Boston, Mass.," and the delivery was to be at the aforesaid port of Boston, to the respondent [J. E. McDonald] or his assigns. Then followed the now usual clause, that, twenty-four hours after arrival and notice, there should be allowed, for receiving the cargo, at the rate of one day, Sundays excepted, for every hundred tons; after which there should be demurrage for every day, including Sundays; and the allegation was that the schooner was not fully unloaded until the twentieth day of December. The cause was heard on facts agreed. The schooner arrived December 4, and found the railroad wharf in Boston occupied by vessels, and lay until the 13th, when the respondent asked the master to haul to another wharf of the same company on the other bank of the river, within the limits of East Cambridge, which he refused to do. A few days later the wharf on the Boston side of the river was clear, and the coal was landed there, and the freight was paid, and a certain sum was tendered for demurrage.

P. H. Hutchinson, for libellant.

We were not bound to go to East Cambridge. Our contract was to carry to the wharf of the company at Boston.

J. H. George and H. E. Morse, for respondent.

1. The wharf at East Cambridge is within the limits of the port of Boston; and an agreement to deliver at the wharf of the Lowell Railroad Company at Boston gave us the election to order the schooner to either wharf.

2. If we were bound to receive the coal only at the Boston side, yet our offer to take it at a suitable place equally convenient for the carrier ought to bar his damages, if he chose to decline the offer.

LOWELL, District Judge. No evidence of usage has been given, and no authorities have been cited to fix the limits of the port of Boston as a term of description in a bill of lading in the coasting trade; nor have I found it necessary to inquire carefully into that subject, because, admitting that the wharf of the Lowell Railroad Company at East Cambridge is not within those limits, and that the consignee had no right to order the schooner to that wharf under pain of not earning freight in case of a refusal; and admitting further, that the freight was already earned before December 13, I am of opinion that the master, coming into a court of admiralty for damages, ought to show that the wharf proposed to be substituted was one at which he could not safely or conveniently unload his cargo, for some reason. The situation of the parties was this on the 13th of December: The time allowed by the contract for receiving the cargo had expired; the master was not bound to wait longer; he might land his coal at some other wharf, at least after notice to the consignee, and would have earned his freight. If he did wait, the consignee was bound to pay so much a day; and his assent to the waiting will usually be presumed. Now, suppose the master waits against the wish of the consignee, who has expressly authorized and required him to land the goods at another wharf, it seems to me that I could not interfere and say the master is entitled to wait until the wharf mentioned in the contract is free, against the expressed wish of the other party, at whose expense he is waiting. Suppose the consignee had sent lighters alongside, and offered to pay any additional expense that might come from discharging in that mode. Here a wharf, close at hand, safe and convenient, was offered him; and if it be divided by a political line from the port of Boston,—which I do not decide,—yet if no question of insurance or any other made a real difficulty, it seems to me he ought to have yielded, or, if not, that he cannot in this court recover the subsequent demurrage. The wharf was not named in the bill of lading for the benefit of the master, but for that of the consignee; and if, on the arrival of the cargo, it happens that the latter cannot avail himself of that wharf, I am by no means prepared to say he may not order delivery at another. My decision, however, does not turn upon this, but upon the ground that if the master unreasonably insisted upon what I assume to be a strict right, he ought not to expect damages in a court of admiralty, when the detention was from choice rather than necessity.

The evidence does not enable me to assess the damages, because it does not give the number of days that were spent after the thirteenth before the vessel was hauled in. Assuming that the time of actual unloading would be the same at both wharfs, there should be deducted from the eleven days for which demurrage is demanded only so many as the vessel lay idle after the offer was made. I understood it to be admitted that a tender was made of eight days' pay, and I

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

suppose this is about what is due, according to the rule above laid down. Interlocutory decree for libellants. Damages to be assessed on the footing of this opinion. Question of costs reserved.

## Case No. 11,885.

ROBBINS v. PEOPLE'S INS. CO.

[2 N. J. Law J. 213.]

Circuit Court, D. New Jersey. April 19, 1879.

INSURANCE — FIRE — POLICIES—APPORTIONMENT—RULE.

When a policy of fire insurance contains a clause that in case of any other insurance the assured should be entitled to receive of the company no greater proportion of the loss sustained than the loss bore to the whole amount insured, the adjustment is made by the following proportion: As the total insurance of a person insured is to his total loss, so is the company's policy to that part of the loss for which it is liable to that person.

On motion for a new trial.

Mr. Winslow, for motion.

Mr. Abbett, contra.

NIXON, District Judge. There were only two points about which the court entertained serious doubt at the trial. 1st. Whether it should have been left to the jury to ascertain from the evidence the intention of the parties to the policy to include the property of the American Watch Company. 2d. Whether the computation of the amount of the defendants' liability was made on correct principles. The defendants cannot complain of the ruling of the court on the first point, as it was in their favor. If there was such latent ambiguity in the phraseology used to describe the property insured as to warrant the court to leave the intention of the parties to the jury, their decision is final. If there was not, no injury has been done, as the finding of the jury is in accordance with the view of the court in regard to the meaning of the contract. With reference to the second point, we are satisfied that the ascertainment of the sum due from the defendant company was made under the true and proper rule. The defendants' policy contained the usual condition that, in case of any other insurance upon the property therein insured, the assured should be entitled to receive of the company no greater proportion of the loss sustained than the sum therein insured bore to the whole amount insured. There was other insurance upon the property of the American Watch Company. The aggregate amount on the property was $107,000. The loss was adjusted at $85,500. Deducting from the defendants' policy the one-sixth of their conceded liability to Robbins and Appleton, to wit, $500, such a method of apportionment and adjustment must then be adopted as will secure a pro rata payment from the different companies, and at the same time will secure to the assured the whole

amount of their loss. The insurance exceeding the loss, the rule may be thus stated: As the total insurance of the watch company ($107,000) is to their total loss ($85,500), so is the defendants' policy (first deducting the amount due thereon to Robbins and Appleton, $4,500) to the proportion of the loss for which the defendant company is liable to the watch company ($3,595.79), to which add the Robbins and Appleton loss, of $500, and we have the amount of the verdict. This mode of calculation was approved by the supreme court of Missouri in Angelbrodt v. Delaware Mut. Ins. Co., 50 Mo. 595, where, as in the present case, the different insurers were called on for a pro rata contribution to make good the loss. The same rule seems to have been adopted by the supreme court of Pennsylvania in the more recent cases of Royal Ins. Co. v. Roedel [78 Pa. St. 19]. Although there is a great conflict of opinion on this subject in different courts, we are quite sure that the foregoing is in harmony with the doctrine of the supreme court of the United States in the case of Home Ins. Co. v. Baltimore Warehouse Co., 93 U. S. 527, and that there was no error in the charge in this respect. Motion for a new trial denied.

[For a similar case by the plaintiffs against the Fireman's Fund Insurance Company of San Francisco, based upon the same state of facts, see Case No. 11,881.]

ROBBINS (POSTMASTER GENERAL v.). See Case No. 11,314.

ROBBINS (UNITED STATES v.). See Cases Nos. 16,170 and 16,171.

## Case No. 11,886.

ROBBINS et al. v. UPTON.

[5 Cranch, C. C. 498.] [1]

Circuit Court, District of Columbia. Nov. Term, 1838.

BAIL—SET-OFF—AFFIDAVIT OF AMOUNT DUE—INDORSER.

1. In a question of bail, the court will not take into consideration a set-off claimed by the defendant. In a suit upon protested bills of exchange, the court will not require an affidavit of the amount due upon the bills, in order to hold the defendant to special bail.

2. It seems to be no objection to bail, that he is indorser of the paper upon which the suit is brought.

Assumpsit [by Robbins & McKnight against Upton] upon protested bills of exchange drawn by the defendant.

Mr. Bradley, for defendant, offered to show a set-off, by way of mitigating the amount for which the bail should justify.

THE COURT (nem. con.) refused to consider the set-off.

Mr. Bradley then contended, that the plaintiff must make affidavit of the amount due upon the protested bills.

---

[1] [Reported by Hon. William Cranch, Chief Judge.]